UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                Plaintiff,            **AFFIRMATION**

    v.

DMITRIY YAKOVLEV, *et al.*,            S-1 09 CR. 587 (ILG)

                Defendants.

---

    Michael H. Gold, affirms and says:

    1).  I am the attorney for the defendant Dmitriy Yakovlev and I submit this Affirmation in support of defendant's Motion to Suppress and other relief. I make this affirmation upon information and belief, based upon the review of documents and conversations with the government.

    2).  On August 11, 2009, thereafter renewed August 21, 2009, a search warrant issued to uncover human remains the government believed to be buried under the basement floor at defendant Dmitry Yakovlev's home at 4614 Surf Avenue, Brooklyn, New York, where he resided with his wife and two young children. Yakovev had been incarcerated since his arrest on July 24, 2009. The warrants both alleged that probable cause existed to believe that the remains of Jane Doe, now known as Irina Malezhik, who was reportedly last seen in October, 2007, were buried in the basement. The warrants specifically requested permission to search for human remains. There was no request to search or seize documents or clothing, or to look through cabinets, drawers

or other parts of the house. Rather, the warrant specifically and solely permitted the search and seizure of human remains alleged to be concealed under the basement floor.

3). On July 16, 2010, almost a year after his arrest, approximately 2 1/2 years after the alleged disappearance of Irina Malezhik and almost 4 1/2 years after the disappearance of Viktor Alekseyev, a search warrant was requested and issued to search a white Lexus registered to the defendant Dmitriy Yakovelev. This warrant sought permission to search for body hair, fibers and other types of biological and/or trace evidence that "may" have remained in the car.

4). The essence of both affidavits in support of the warrants is the same; to wit, ATM and credit cards belonging to Irina Malezhik and Viktor Alekseyev were alleged to have been used by defendant Dmitriy Yakovlev and his co-defendant after their alleged disappearance. In the case of the house search warrant, no reference is made to Alekseyev. Rather, it focuses on the disappearance of Irina Malezhik and the allegedly unauthorized use of her checks and credit cards after her alleged disappearance by the defendants. The only other salient information provided in the house search warrant application was the statement by a cooperating witness that defendant Yakovlev borrowed some machinery to do work in his basement at or about the time of the alleged disappearance and that there was a foul odor in the basement when the witness entered it approximately 9 months later.

5). As discussed in more detail in the accompanying Memorandum of Law, there is such a dearth of probable cause in the supporting affidavit for the house search that the agent had to know was deficient to justify its issuance. The litany of dates and times that the defendants allegedly used Irina Malezhik's financial instruments coupled with the subjective claim that the basement had a bad odor over a year before the application for the warrant in no way establishes probable cause to believe that human remains

were concealed under the basement floor. At most, probable cause was shown that the defendants used the credit cards and ATM's and had checks deposited in their accounts. It was rank speculation to assume that human remains were located under the basement floor. Not surprisingly, no remains were found.

5). While no remains were uncovered, the agents took the opportunity to vastly and unilaterally broaden the search authorization by seizing a variety of items found in the boiler room and in filing cabinets and boxes. None of the seized items was contraband. Specifically, according to the government's discovery letter, ladies underwear was taken from the floor of the boiler room, photographs and keys were seized from a filing cabinet in the boiler room, a Russian language newspaper was taken from a box on the floor in the basement and a magazine was taken from the second floor of the defendant's residence.

6). The authorization to search was discreet and circumscribed. Agents were permitted to dig up the basement floor in search of human remains. The agents did not seek and were not granted permission to conduct a wholesale and random search for papers, keys or underwear. AUSA James Gatta has advised me that no consent was obtained to search any area of the home and that the seized items were all pursuant to the court authorized warrant. There can be no justification for the seizure of non-contraband found in adjacent rooms or in filing cabinets or boxes. If the agents encountered any items that were in public view once they entered and they believed it was evidence of the offense they were free to seek further authorization to seize those items while they safeguarded them. Instead, the agents ran roughshod over the issuing court's clear boundaries and cherry picked things that might or might not have any evidentiary value.

7). The application to search the vehicle is particularly flawed and requires a hearing to determine if any misrepresentations or misstatements deliberately were included or omitted that led to its issuance. After delineating the disappearance of Malezhik and Alekseyev, the affiant claims that a "Special Agent who is a member of the FBI's Evidence Response Team (ERT), and who is specially trained in the detection and recovery of biological and trace evidence" advised that "biological and/or trace evidence, such as hairs and fibers *may* remain in a location, such as a vehicle, for *many* years." (Aff. page 30, emphasis added).

8). There is no identification or description of the person making this representation or what qualifications he/she possessed to substantiate that amorphous and insubstantial conclusion that they "*may*" remain for "*many*" years. There is no explanation of any degrees or particularized training or expertise of this agent other than his/her membership in the ERT. Nor is there any description of the duties and responsibilities of either ERT or the agent. Did the agent receive any scholastic training or degree or was the expertise a matter of internal training? Exactly what kind of training did he/she receive? How long was this person in the unit and how often did he/she assist in the recovery of this type of evidence? Since the affidavit says that hairs and fibers *may* remain for *many* years, what is a reasonable time period that such evidence can be expected to be recovered? What circumstances must exist in the vehicle in order to maintain the possibility of survival?

9). These are just some of the questions raised by the abrupt reliance on the unstated credentials of an unidentified alleged expert. Without answers, it is impossible to determine whether critical information was withheld from or misrepresented to the issuing court. Certainly, the lack of any clarification in the warrant application negates any possibility that probable cause existed. Without some reliable assurance that hairs and fibers were capable of surviving, the search rested on the less than legal assertion

from the affiant that "probable cause to believe that biological and/or trace evidence, such as hairs and fibers, of Irina Malezhik *may* be found." ( Aff. page 30). By its own language, probable cause was not established that evidence would be found but, rather that it may be found. If there were a material misstatement or reckless omission regarding the alleged expert, there is absolutely no basis to conclude that hair and fiber might survive in a vehicle for more than 3 1/2 years. This is sorely lacking the necessary legal heft to justify the issuance of the warrant. Accordingly, the evidence must be suppressed.

      10). The government will attempt to introduce graphic and gruesome pictures of the decomposed and dismembered body of Viktor Alexeyev that were recovered from plastic bags found near the side of a road in New Jersey. These photos are highly inflammatory and prejudicial and add nothing to the prosecution other than the ability to revolt and enrage the jury. There is no argument that the victim was murdered or that it was done accidentally or mistakenly. The defendant simply denies complicity. We will stipulate to the dismemberment and otherwise consent to the introduction of evidence that establishes that fact, within reason. Whatever minimal probative value exists to justify its admission is clearly outweighed by the monumental prejudice that will accrue to the defendant. While it may be premature, we respectfully ask the court to either order the government not to introduce said photos or, in the alternative, order them to refrain from referencing them in the opening statements and until some time that the Court rules on this application.

      11). While the forensic evidence seized from the car and the body parts have yet to be analyzed completely, we also respectfully urge the Court to preclude any evidence of hairs, fibers or other types of yet to be disclosed evidence obtained from the body parts and bags they were found in since the parts were destroyed or released prior to the defense having an opportunity to examine and remove other potentially relevant

evidence and the bags were completely rendered forensically useless after testing by the government. It was obvious that these body parts and bags would be critical evidence in any prosecution yet they were not preserved for future analysis. To allow this evidence is tantamount to permitting selective incriminating statements without granting the time honored right to provide the context of the statements. The defense never had the opportunity to examine for other evidence. This is particularly germane since we have just been advised that another individual has claimed participation in the disposal of the body on behalf of individuals not related to the defendant. If his, or other persons, hair was found on the body parts, this would surely raise a reasonable doubt as to the guilt of Mr. Yakovlev.

    WHEREFORE, it is respectfully requested that the defendant Dmitriy Yakovlev's Motion to Suppress be granted or, in the alternative, a hearing be held and that court issue a preliminary order denying the government's anticipated attempt to introduce photos of the dismembered body of Viktor Alexeyev along with any forensic evidence taken from the bags and body parts.

_____

Michael H. Gold

Dated: New York, New York
      September 17, 2010