TM:JDG/EAG/AH
F. #2009R01500

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -                 09 CR 587 (S-1) (ILG)

DMITRIY YAKOVLEV,
    also known as
    "Dmitri Yakovlev,"
    "Dimitri Yakovlev," and
    "Dimitriy Yakovlev," and
JULIA YAKOVLEV,
    also known as
    "Ioulia Sotcilina,"
    "Julia Sotcilina," and
    "I. Sotcilina,"

              Defendants.

- - - - - - - - - - - - - - - -X


MEMORANDUM OF LAW IN SUPPORT OF
THE GOVERNMENT'S MOTION TO ADMIT CERTAIN
EVIDENCE AGAINST THE DEFENDANTS AT TRIAL


                        LORETTA E. LYNCH
                        United States Attorney
                        Eastern District of New York
                        271 Cadman Plaza
                        Brooklyn, New York 11201


James D. Gatta
Elizabeth A. Geddes
Amanda Hector
Assistant U.S. Attorneys
(Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT.......................................... 1

STATEMENT OF FACTS............................................. 2

    A.   The Disappearance of Michael Klein and Fraud
        Utilizing Klein's Identity........................... 3

    B.   The Disappearance of Viktor Alekseyev and Fraud
        Utilizing Alekseyev's Identity...................... 5

    C.   The Disappearance of Irina Malezhik and Fraud
        Utilizing Malezhik's Identity....................... 7

ARGUMENT...................................................... 9

    A.   The Evidence Regarding Klein's Disappearance is
        Directly Relevant to and Inextricably Intertwined
        With the Evidence of the Charged Crimes..............10

    B.   Evidence of Other Acts by the Defendants are
        Admissible Under Federal Rule of Evidence 404(b).....13

        1.   Evidence of Other Acts by the Defendants........14

            a.   Julia Yakovlev's Involvement in Forgery....14

            b.   Dmitriy Yakovlev's Prior
               Fraud Solicitations........................14

        2.   Discussion......................................15

            a.   Legal Standard.............................15

            b.   Application................................17

    C.   The Statements of Multiple Witnesses Regarding the
        Stated Intentions of Viktor Alekseyev and
        Michael Klein Are Admissible Under Federal Rule of
        Evidence 803(3)......................................19

        1.   Pertinent Facts.................................19

        2.   Discussion......................................21

            a.   Legal Standard.............................21

i

           b.   Application................................23

   D.   Admission of Videotaped Pre-Trial Deposition
       is Appropriate in this Case..........................24

      1.   Pertinent Facts................................25

      2.   Discussion....................................26

           a.   Legal Standard............................26

           b.   Application................................27

CONCLUSION..................................................29

<u>PRELIMINARY STATEMENT</u>

The defendants Dmitriy Yakovlev and Julia Yakovlev are charged in a seventeen-count superseding indictment ("Indictment"), charging them with a series of crimes stemming from their illegal use of the credit cards, bank accounts and identities of three individuals – Michael Klein, Viktor Alekseyev and Irina Malezhik – between 2003 and 2007.  The Indictment further charges defendant Dmitriy Yakovlev with murdering Alekseyev and Malezhik in connection with his fraudulent use of their identities.

The government respectfully submits this memorandum of law in support of its motions <u>in limine</u> to admit at trial: (1) certain evidence of the charged crimes; (2) evidence of certain other uncharged acts against the defendants; (3) evidence of statements made by Klein and Alekseyev expressing intentions to perform certain future acts; and (4) a videotaped deposition of an unavailable witness pursuant to Rule 15 of the Federal Rules of Criminal Procedure.

For the reasons set forth below, the evidence that the government seeks to introduce at trial is admissible, highly relevant and the probative value of the evidence far outweighs any potential prejudice to the defendants.

<u>STATEMENT OF FACTS</u>

The following is a brief recitation of relevant facts and background regarding the charges against the defendants Dmitriy Yakovlev and Julia Yakovlev.  The charges stem from the defendants' use and attempted use of the identities of three persons – Michael Klein, Viktor Alekseyev and Irina Malezhik – immediately following each of their disappearances, in 2003, 2005 and 2007, respectively.

The Indictment charges the defendants Dmitriy Yakovlev and Julia Yakovlev with identity theft, access device fraud, effecting fraudulent transactions, bank fraud and credit card fraud, as a result of their illegal use of the identities of Klein, Alekseyev and Malezhik between 2003 and 2007, in violation of Title 18, United States Code, Sections 1028(a)(7), 1028A(a)(1), 1029(a)(2), 1029(a)(5) and 1344, and Title 15, United States Code, Section 1644(a).[1]  The defendant Dmitriy Yakovlev is further charged with knowingly and intentionally committing a crime of violence, specifically the murders of Alekseyev and Malezhik in violation of Title 18, United States Code, Sections 1028(a)(7) and 1028(b)(3)(B), in connection with Dmitriy Yakovlev's fraudulent use of their identities.

---

[1]    Specifically, Dmitriy Yakovlev is charged with identity theft and fraud charges in connection with all three victims; Julia Yakovlev is charged only with the crimes related to the fraudulent use of Irina Malezhik's identity.

The government will establish the following facts, among others, at trial through witness testimony as well as documentary, forensic and other evidence.[2]

A.    The Disappearance of Michael Klein
      and Fraud Utilizing Klein's Identity

On November 26, 2003, Michael Klein, a 69 year-old retired civilian employee of the New York City Police Department ("NYPD"), sold a residential property located at 4120 Manhattan Avenue, in the Sea Gate community of Brooklyn, New York ("4120 Manhattan Avenue") to the defendant Julia Yakovlev and another individual.  Klein had rented a number of residential units in 4120 Manhattan Avenue to tenants and also, at times, had lived there himself.  Following the sale of 4120 Manhattan, Klein intended to reside with his girlfriend in Mastic, New York.  At the time of closing, Klein was due to be paid approximately $368,000.  Klein disappeared following the closing on 4120 Manhattan Avenue and has not been seen by friends or family since that date.

Following the closing on Klein's property, Dmitriy Yakovlev was found inside 4120 Manhattan Avenue with keys to the property.  Yakovlev explained that he had entered through a window and had found the keys inside.  On November 28, 2003, two

_____

[2]    Any statements attributed to individuals in the recitation of facts are set forth here in sum and substance and in part.

3

days after his disappearance, a car belonging to Klein was found parked illegally in Irvington, New Jersey and was towed the following day. The car was found parked approximately two miles from a residential complex where the defendants lived in the late 1990s. No one attempted to claim the car and it was subsequently destroyed.

Shortly after Klein disappeared, the defendant Dmitriy Yakovlev began fraudulently using Klein's identity. Also, some weeks later, Yakovlev was in possession of a number of credit cards and identification documents belonging to Klein and sought another's assistance in using Klein's personal information to obtain Klein's money.

In December 2003, two checks made payable to Michael Klein in connection with the sale of 4120 Manhattan Avenue totaling over $25,000 were deposited into a Citibank joint bank account belonging to Dmitriy Yakovlev and Julia Yakovlev. Klein's signature and endorsement appear to have been forged on these checks. In February 2004, a Washington Mutual bank account was opened in Klein's name (the "Washington Mutual account"). The account was opened either on-line or over the telephone, and the address associated with the account was located in Cape Coral, Florida (the "Cape Coral address"). On the same day, a cellular telephone account was established for a telephone number in Klein's name, using the same Cape Coral address. Records

4

reveal that telephone number is the number associated with the Washington Mutual account.  Weeks later, a third check made payable to Klein in connection with his sale of 4120 Manhattan Avenue – in the amount of $348,519 – was deposited into the Washington Mutual account at a banking location on Brighton Beach Avenue in Brooklyn.  Witness testimony and documentary evidence will show that both the Washington Mutual account and the cellular telephone account associated with that account were established at Dmitriy Yakovlev's direction.

In the following months, a caller claiming to be Michael Klein and using the cellular telephone established in Klein's name made numerous calls to Washington Mutual seeking to obtain the funds in the Washington Mutual account.  The individual informed Washington Mutual representatives that he did not have any documents to verify his identity.  Witness testimony and documentary evidence will show that these attempts to obtain the funds due to Klein in connection with his sale of 4120 Manhattan Avenue were done at the direction of Dmitriy Yakovlev.

B.    The Disappearance of Viktor Alekseyev
      and Fraud Utilizing Alekseyev's Identity

Viktor Alekseyev, who was also a Sea Gate resident, disappeared on December 19, 2005.  Alekseyev was scheduled to fly from New York to Moscow, Russia on December 20, 2005.  He had purchased a ticket to return to New York from Russia on March 20,

2006.  Alekseyev had told others that he intended to open a business in Russia.

Alekseyev made certain preparations in anticipation of his long-term trip to Russia.  During Fall 2005, Alekseyev obtained a home equity line of credit in the amount of $180,000 on 3709 Neptune Avenue, Brooklyn, New York, a property Alekseyev purchased in 2003 ("3709 Neptune Avenue").  Alekseyev told others about the fact that he obtained the loan, and generally talked openly about his finances.  Alekseyev also agreed to rent the basement apartment in 3709 Neptune Avenue, in which he had resided, to tenants while he was scheduled to be in Russia.  Alekseyev also asked friends, including defendant Dmitriy Yakovlev, to look after 3709 Neptune Avenue while he was away and to collect rent from the tenants occupying his basement apartment, as well as other apartments in 3709 Neptune Avenue.

On the day before he was scheduled to leave for Russia, Alekseyev was seen with Dmitriy Yakovlev in a car parked in the driveway of 3709 Neptune Avenue.  In the afternoon of December 20, 2005, the door to Alekseyev's residence was found ajar, but Alekseyev was not inside.  Alekseyev never boarded his flight to Russia, and was never seen by friends or family members again.

The defendant Dmitriy Yakovlev began fraudulently using Alekseyev's identity soon after Alekseyev's disappearance.  From December 23, 2005 through January 7, 2006, Yakovlev used credit

cards belonging to Alekseyev to purchase goods, including jewelry and clothing worth thousands of dollars, at stores in Brooklyn, and also to obtain cash advances at Brooklyn banking locations. In connection with one of the credit card purchases, Yakovlev presented Alekseyev's New York State driver's license as a means of identification.  Yakovlev also used debit cards belonging to Alekseyev to obtain funds from Alekseyev's bank accounts by making automated teller machine ("ATM") withdrawals; on two occasions, images of Yakovlev using Alekseyev's debit cards to withdraw funds from Alekseyev's bank accounts were captured by security cameras at an ATM location in Brooklyn.

On January 8, 2006, severed body parts identified as belonging to Alekseyev were recovered at a park in New Jersey, a park in which the defendant Dmitriy Yakovlev had received a summons in 1997.  The area of the park where the body parts were discovered is approximately two miles from the residential complex where the defendants resided in the late 1990s.

C.    The Disappearance of Irina Malezhik
      and Fraud Utilizing Malezhik's Identity

On the afternoon of October 15, 2007, an image of Irina Malezhik, a Russian language translator, exiting her residence in Brooklyn was captured on the security camera located in the lobby of her apartment building.  Malezhik was never seen again by family, friends, neighbors or co-workers.  The defendants Dmitriy Yakovlev and Julia Yakovlev began to fraudulently use Irina

7

Malezhik's identity that same afternoon.  Specifically, the
defendants began depositing checks belonging to Malezhik into
their joint bank account.  Malezhik's signature and endorsement
appear to have been forged on these checks.

Also on the same day that Malezhik disappeared,
Discover Bank received telephone calls from an individual
purporting to be Malezhik using a cellular telephone connected to
Malezhik ("Malezhik's cell phone").  That person sought to
obtain, and subsequently received, authorization to use one of
Malezhik's Discover credit cards to withdraw cash from ATMs.  The
next day, October 16, 2007, the defendants began using credit
cards in Malezhik's name to purchase thousands of dollars worth
of goods and to obtain cash advances at Brooklyn ATM locations.

In addition, between October 17 and October 22, 2007,
the defendant Julia Yakovlev, purporting to be Malezhik, used
Malezhik's credit cards to purchase two Franck Muller watches
from a Brooklyn-based jewelry dealer.  In addition to using
Malezhik's credit cards to make these purchases, the defendant
Julia Yakovlev also repeatedly used Malezhik's cell phone to
communicate with the jewelry dealer, and presented Malezhik's
Social Security card to the jewelry dealer as a means of
identification.  The total billed to Malezhik's credit cards for
the two watches was $16,210.

8

Two invoices prepared in connection with the watch purchases each bear signatures in the name of Irina Malezhik. A handwriting analysis performed by a Federal Bureau of Investigation ("FBI") Laboratory determined that, based on known handwriting samples, the "Irina Malezhik" signature on the two invoices were not prepared by Malezhik. The FBI Laboratory also determined that the defendant Julia Yakovlev's fingerprint is on one of the two watch invoices.

While using Malezhik's credit cards at a Century 21 department store located in Westbury, New York on October 19, 2007, images of both defendants Dmitriy Yakovlev and Julia Yakovlev were captured on a security video at a register at the time of the purchases.

<u>ARGUMENT</u>

At trial, to prove the charged offenses, the government anticipates offering evidence regarding the disappearance of victim Michael Klein, as well as other uncharged acts of the defendants, including defendant Julia Yakovlev's involvement in forging checks and immigration documents, and a prior attempt by defendant Dmitriy Yakovlev to cash checks not made payable to him. In addition, the government anticipates offering testimony regarding statements made by two victims - Klein and Viktor Alekseyev – prior to their disappearances regarding Klein and Alekseyev's intentions to perform certain future acts. Moreover,

9

the government respectfully requests that it be permitted to introduce the videotaped material testimony of an unavailable witness, Tamara Alekseeva, the mother of murder victim Viktor Alekseyev.  For the reasons set forth below, all of the proposed evidence is admissible, highly relevant and the probative value of the proposed evidence far outweighs any potential prejudice to the defendants.

A.   The Evidence Regarding Klein's Disappearance is Directly Relevant to and Inextricably Intertwined With the Evidence of the Charged Crimes

Evidence of Klein's disappearance is directly relevant to the charge in Count One of the Indictment, which charges defendant Dmitriy Yakovlev with committing and attempting to commit bank fraud through use of Klein's identity, in violation of Title 18, United States Code, Section 1344.  In addition, evidence regarding Klein's disappearance is inextricably intertwined with the evidence of the charged bank fraud offense and thus admissible to complete the story of that charged crime.

As the Second Circuit has explained, "[t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency."  United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997).  Accordingly, "[r]elevant evidence is not confined to that which directly establishes an element of the crime."  Id.; see also Fed. R.

10

Evid. 401, 402. Indeed, as the Supreme Court has recognized, in analyzing the admissibility of evidence, the trial court should make its determinations "with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case." Old Chief v. United States, 519 U.S. 172, 183 (1997).

It is well settled that "'evidence of uncharged criminal activity is not considered other crimes evidence under Rule 404(b) of the Federal Rules of Evidence ("Rule 404(b)") if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'" United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (quoting Gonzalez, 110 F.3d at 942); see also United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989) (same).

As set forth above (see pp. 3-5), defendant Dmitriy Yakovlev began to utilize the identity of Michael Klein shortly after Klein's disappearance on November 26, 2003. The government will thus seek to admit facts regarding Klein's disappearance as directly relevant and inextricably intertwined with the bank fraud offense with which Yakovlev is charged. Among other facts, the evidence at trial will establish that Klein has not been seen by family or friends since the day of the sale of 4120 Manhattan

11

Avenue.  As set forth above, Klein's car was found abandoned in a
New Jersey location just two miles from a residential complex
where the defendants both lived in the late 1990s (and in the
general vicinity of where Viktor Alekseyev's remains were found
approximately two years later).  Sometime after the closing on
4120 Manhattan Avenue, the individual who purchased the property
from Klein with Julia Yakovlev ("Witness #1") found Yakovlev
inside the property; Yakovlev stated that he had gained access
through a window and had found keys to the property inside.
Yakovlev later sought Witness #1's assistance to cash a $7,000
bank check payable to Klein that Witness #1 had brought to the
closing in connection with the sale of the property.  When
Witness #1 recognized the check as one he brought to the closing,
Yakovlev claimed that he had seen Klein driving away from 4120
Manhattan Avenue following the closing and that he had caught up
with Klein and Klein had given him the check.  The evidence will
also show that Yakovlev was later in possession of Klein's
personal information, a number of Klein's credit cards and
identification documents, and that Yakovlev sought Witness #1's
assistance in using Klein's personal information to access
Klein's assets.

        The evidence will further establish that two checks
payable to Klein in connection with his sale of 4120 Manhattan
Avenue were deposited in Dmitriy Yakovlev and Julia Yakovlev's

joint bank account at Citibank.  Moreover, following Klein's disappearance, a bank account and cellular telephone account were established in Klein's name into which a third check payable to Klein in connection with his property sale for $348,519 was deposited.  The evidence will also show that the creation of those accounts and the attempts to access those funds were directed by Dmitriy Yakovlev.

Accordingly, the facts of Michael Klein's disappearance that the government intends to offer at trial are facts both directly relevant to and inextricably intertwined with the bank fraud offense charged in Count One of the Indictment.[3]

B.   Evidence of Other Acts by the Defendants are
     Admissible Under Federal Rule of Evidence 404(b)

The government also seeks to introduce into evidence at trial the following uncharged crimes committed by the defendants. The evidence described below is admissible because the proposed evidence is probative of intent and knowledge, and absence of mistake or accident, and the probative value of the proposed

---

[3]      The government also anticipates presenting a second superseding indictment to the grand jury adding the additional charge of bank fraud conspiracy against Dmitriy Yakovlev in connection with his fraudulent use of Michael Klein's identity. In addition to the fact that evidence of Klein's disappearance is inextricably intertwined with the bank fraud offense currently charged in Count One, such evidence would also be admissible "as direct evidence of the conspiracy itself" without regard to the requirements of Rule 404(b).  United States v. Baez, 349 F.3d 90, 93-94 (2d Cir. 2003).

evidence is not substantially outweighed by its prejudicial effect.

        1.   <u>Evidence of Other Acts by the Defendants</u>

           a.   <u>Julia Yakovlev's Involvement in Forgery</u>

The government seeks to elicit testimony at trial from an individual ("Witness #2") that during the 1990s, he/she was involved in a business based in Brooklyn assisting recent immigrants to the United States with obtaining immigration documents and identification documents.  The government expects additional witnesses to testify that Witness #2 assisted them with obtaining such documents.  The government expects Witness #2 to testify that Julia Yakovlev assisted Witness #2 in this business.  Witness #2 will testify that Julia Yakovlev was skilled as an artist and designer, had taken graphic design classes, and also had experience using computer design programs. Witness #2 will testify that Julia Yakovlev produced forged immigration forms.  Witness #2 will further testify that two brothers who operated a medical office in Brooklyn, and who were friends of Witness #2 and Julia Yakovlev, would periodically ask Julia Yakovlev to forge checks.

           b.   <u>Dmitriy Yakovlev's Prior Fraud Solicitation</u>

The government also seeks to offer testimony from Witness #1 that Dmitriy Yakovlev asked Witness #1 to cash two checks, each for $1000, which were not made payable to Yakovlev.

Yakovlev's solicitation of Witness #1's participation in this
fraud was prior to the purchase of 4120 Manhattan Avenue from
Michael Klein.

    2.  <u>Discussion</u>

       a.  <u>Legal Standard</u>

      Pursuant to Rule 404(b), evidence of other crimes,
wrongs, and acts, while not admissible to prove propensity to
commit crime, is admissible "as proof of motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of
mistake or accident."  Fed. R. Evid. 404(b).  "The Second Circuit
evaluates Rule 404(b) evidence under an 'inclusionary approach'
and allows evidence 'for any purpose other than to show a
defendant's criminal propensity.'"  <u>United States v. Brand</u>, 467
F.3d 179, 196 (2d Cir. 2006) (quoting <u>United States v. Garcia</u>,
291 F.3d 127, 136 (2d Cir. 2002) (internal quotation marks
omitted)).

      Thus, the Second Circuit has approved the admission of
other crimes evidence to prove, for example, (1) a defendant's
intent to commit a proscribed act, <u>see</u> <u>Brand</u>, 467 F.3d at 197
(evidence that the defendant possessed child pornography
admissible as proof that he intended to engage in illicit sexual
conduct with a minor); (2) a defendant's knowledge of a relevant
fact, <u>see</u> <u>United States v. Paulino</u>, 445 F.3d 211, 222-23 (2d Cir.
2006) (prior cocaine convictions admissible as proof that the

15

defendant was aware that substance in his closet was cocaine);
(3) a defendant's motivation for a charged crime, see United
States v. Laflam, 369 F.3d 153, 156-57 (2d Cir. 2004) (evidence
that the defendant was a drug user admissible as proof of motive
to commit the charged bank robbery); (4) a defendant's capacity
to commit the charged crime, see United States v. Zedner, 401
F.3d 36, 49-50 (2d Cir. 2005) (evidence of prior fraud admissible
as proof of the defendant's "financial sophistication [and] his
ability to execute complex schemes"), rev'd on other grounds, 126
S. Ct. 1976 (2006); and (5) a defendant's participation in a
crime based on his prior participation in criminal activity
involving a similar modus operandi, see United States v. Sliker,
751 F.2d 477, 486-87 (2d Cir. 1984) (evidence of defendant's
involvement in uncharged bank fraud with similar modus operandi
admissible to prove defendant's participation in charged bank
fraud); United States v. Reed, 639 F.2d 896, 906-7 (2d Cir. 1981)
(same).

   In general, "the government is required to establish
only a similarity or some connection to establish that a prior
act is relevant to one of the elements . . . of the crime
charged." Brand, 467 F.3d at 197; Paulino, 445 F.3d at 223
(internal citations omitted). Moreover, evidence admissible
pursuant to Rule 404(b) should not be excluded on grounds of
unfair prejudice where the evidence does not "involve conduct

16

more inflammatory than the charged crime[s]." Paulino, 445 F.3d at 223.

>   b.   Application

Here, the government's proffered evidence of other uncharged acts committed by the defendants is probative of the defendants' intent, knowledge and absence of mistake or accident, and the probative value of the evidence is not substantially outweighed by its prejudicial effect.

First, evidence of the defendant Julia Yakovlev's participation in prior forgeries and Dmitriy Yakovlev's prior solicitation of Witness #1 to engage in fraud is relevant and admissible to prove the defendants' intent, knowledge, and absence of mistake or accident, where, as here, the government anticipates that the defendants may claim that they were acting with an innocent purpose – i.e., the permission of the victims – with respect to their use of the credit cards, debit cards, checks and other identification documents of Klein, Alekseyev and Malezhik.[4]  See United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993) (noting that "prior act evidence is generally

---

[4]    Indeed, in post-arrest statements, defendant Dmitriy Yakovlev told agents that in the past he had been given permission by others to use their credit cards, in lieu of cash repayment for loans that Yakovlev had extended to them.  Yakovlev specifically stated that he had used credit cards belonging to an individual named "Viktor" after Yakovlev had lent Viktor approximately $30,000, and that in 2007 he had agreed to accept "Irina's" credit cards as a form of payment for a $20,000 loan.

admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged") (citing United States v. Gordon, 987 F.2d 902, 908 (2d Cir. 1993)).  In addition, Julia Yakovlev's participation in prior forgeries reveals that she has the skill – the ability to forge documents – and, thus, the opportunity to commit the charged crimes, which involved forgeries of Malezhik's signature on the watch purchase invoices and checks.

        Moreover, the probative value of the evidence of uncharged crimes the government seeks to admit – which involve frauds and attempted frauds – is not substantially outweighed by its prejudicial effect.  Evidence of other crimes is admissible when offered for a proper purpose so long as the evidence "'[does] not involve conduct any more sensational or disturbing than the crime[] with which [the defendant has been] charged.'" United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992) (quoting United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990)).  Where the uncharged crimes are similar in nature to the charged crimes, Rule 404(b) evidence is generally admissible under the Rule 403 balancing test.  See United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999) (upholding admissibility of evidence that the defendant, a police officer charged with engaging in excessive use of force with an arrestee, choked another arrestee on the basis that "the evidence did not involve

18

conduct more inflammatory than the charged crime, and the district court gave a careful limiting instruction"). Here, the uncharged crimes are similar in nature to the crimes with which Julia Yakovlev is charged and substantially less prejudicial than the crimes with which Dmitriy Yakovlev is charged, namely, two murders. Accordingly, on balance, the evidence of the defendants' involvement in uncharged crimes should be admitted at trial.

     C.    The Statements of Multiple Witnesses Regarding the Stated Intentions of Viktor Alekseyev and Michael Klein Are Admissible Under Federal Rule of Evidence 803(3)

The government also moves to admit under Rule 803(3) of the Federal Rules of Evidence ("Rule 803(3)") statements by multiple witnesses that Viktor Alekseyev and Michael Klein expressed intentions to perform certain future acts. Such declarations of intent are admissible at trial.

     1.   Pertinent Facts

The government expects to elicit the following:

- Witness #1 is expected to testify that Michael Klein expressed his intention to move in with his girlfriend in Long Island after the sale of 4120 Manhattan Avenue in Brooklyn. Witness #1 is also expected to testify that Klein stated that he would meet Witness #1 at 4120 Manhattan Avenue after the closing on that sale in order to give Witness #1 keys.

- Witness #3 is expected to testify that Klein expressed his intention to move to the home he shared with his girlfriend in Mastic, New York after selling 4120 Manhattan Avenue. Witness #3 is also expected to testify that Klein told him/her that Klein intended to

stay at 4120 Manhattan Avenue for a few days after the closing in order to pack his belongings.

- Witness #4 is expected to testify that Viktor Alekseyev told Witness #4 that: (1) he planned to fly to Russia on December 20, 2005 to open a new business, possibly a pharmacy or hair salon, and to return in March 2006; (2) he planned to rent his basement apartment to a couple beginning around the time of his departure; and (3) he planned to park his Nissan Altima at Dmitriy Yakovlev's investment property.  Witness #4 is further expected to testify that Alekseyev stated his intention to have Witness #4 drive him to the airport in the United States and to have a particular individual pick him up from the airport in Russia.  Also, during a telephone conversation on December 19, 2005, Alekseyev told Witness #4 that he would call him/her back on the telephone.

- Witness #5 is expected to testify that, in the Fall of 2005, Alekseyev told Witness #5 that he was planning to return to Russia to open a pharmacy, and wanted to rent out his apartment.  Witness #5 is also expected to testify that, a few days prior to Alekseyev's disappearance and after Witness #5 found tenants for Alekseyev's apartment, Alekseyev stated that he would leave the tenants certain items, including a computer and telephone, to use while he was in Russia.

- Witness #6 is expected to testify that he/she rented Alekseyev's apartment and that Alekseyev expressed to Witness #6 his intention (1) to fly to Russia on December 20, 2005, (2) to open a business in Russia, and (3) to leave certain items, including a computer and telephone, for Witness #6's use.

- Witness #7 is expected to testify that Alekseyev told him/her that he was planning to travel to Russia for approximately six months to open a pharmacy business. Witness #7 is also expected to testify that he/she rented Alekseyev's apartment and that Alekseyev told him/her that he would leave certain items, including a computer and telephone, in the apartment for Witness #7's use.

- Witness #8 is expected to testify that, just prior to Christmas 2005, Alekseyev told him/her that he planned to fly to Russia in a few days to open a business.

- Witness #9 is expected to testify that, in early December 2005, Alekseyev told him/her that he intended to go to Russia to start a business and to transport $60,000.00 to Russia.  Witness #9 is also expected to testify that, on December 19, 2005, Alekseyev told Witness #9 that he had to take care of something and would then come to Witness #9's place of business in order to have a drink and celebrate Witness #9's birthday.

- Witness #10 is expected to testify that Alekseyev told Witness #10 that he planned to fly to Russia on December 20, 2005 in order to start a business and intended to bring $20,000 in cash with him to Russia. Witness #10 is also expected to testify that Alekseyev communicated his intention to return to the United States.

- Witness #11 is expected to testify that Alekseyev expressed his intention to open a chain of drug stores in St. Petersburg with Witness #11.  Witness #11 is also expected to testify that Alekseyev planned to stay in St. Petersburg and live in an apartment while he and Witness #11 opened five stores and that Alekseyev intended to use a Volvo sedan that he had previously shipped to Russia while he was there.  Alekseyev also told Witness #11 that he intended to return to the United States once the business was stable.  Likewise, Alekseyev told Witness #11 that he intended to keep his house in Brooklyn as opposed to selling it.  Finally, Witness #11 is expected to testify that Alekseyev called Witness #11 prior to his scheduled departure to Russia to confirm his intended arrival time as well as the fact that Witness #11 would pick him up at the airport.

- Witness #12 is expected to testify that Alekseyev told Witness #12 that Alekseyev planned to fly to Russia on December 20, 2005.

2.   <u>Discussion</u>

a.   <u>Legal Standard</u>

Under Rule 803(3), a statement is not excluded by the prohibition on hearsay if it is:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed . . . .

Pursuant to this rule, a statement of intent to carry out a plan is admissible to prove that the declarant thereafter acted in accordance with the stated plan or intent.  See Mutual Life Ins. Co. of New York v. Hillmon, 145 U.S. 285, 295-96 (1892); see also Fed. R. Evid. 803 Advisory Committee Note to Paragraph (3) (1972) ("The rule of Mutual Life Ins. Co. v. Hillmon, 145 U.S. 285 . . .

allowing evidence of intention as tending to prove the doing of the act intended, is . . . left undisturbed.").[5]

        b.   Application

      The above-described statements that the government expects to elicit regarding the stated intentions of Alekseyev and Klein will be offered to show that Alekseyev and Klein themselves acted in accordance with the stated plan or intent.

---

[5] Such statements are also admissible as evidence of a non-declarant's actions where "there [i]s independent evidence that connect[s] the declarant's statement with the non-declarant's activities." United States v. Best, 219 F.3d 192, 198 (2d Cir. 2000); see also United States v. Williams, No. 05-6036, 2007 WL 3105760, at *2 (2d Cir. Oct. 23, 2007); United States v. Nersesian, 824 F.2d 1294, 1325 (2d Cir. 1987) ("[D]eclarations of intention or future plans are admissible against a nondeclarant when they are linked with independent evidence that corroborates the declaration."); United States v. Cicale, 691 F.2d 95, 103–05 (2d Cir. 1982). The corroboration necessary to render a declarant's statement of present intent admissible as evidence against a non-declarant need not be direct evidence, circumstantial evidence is sufficient. Best, 219 F.3d at 199.

      For example, in United States v. Cicale, a declarant told an undercover agent on multiple occasions that he was intending to visit his drug "source," to whom he referred by name. The declarant's statements also referred to the specific locations at which he intended to meet his source, such as at "the guy's house," or "at the restaurant where he's at" "right now." 691 F.2d at 103 n.2. Shortly after making each statement, the declarant was observed either meeting with the defendant Cicale or arriving at Cicale's home. Id. at 103. The Second Circuit held that the declarant's statements were thus admissible against Cicale because there was independent evidence, i.e., surveillance of Cicale meeting with the declarant soon after the declarant stated he would meet his "source," that Cicale was the "source" referred to by the declarant and that Cicale had engaged in drug trafficking. Id. at 103 & n.2.

For example, with respect to Klein, Klein's statements regarding his plan to return to 4120 Manhattan Avenue after the closing in order to hand over the keys, to pack his belongings and then to move permanently to Mastic, New York, are offered to show that Klein did, in fact, take steps in conformity with his intentions, i.e., that he returned to 4120 Manhattan Avenue after the closing.  Similarly with respect to Alekseyev, Alekseyev's statements regarding his intention to travel to Russia for a period of three months, to open a business, and thereafter to return to the United States, among other statements, are offered to show that Alekseyev took various steps in accordance with these stated plans, i.e., (1) he booked a flight to Russia as well as a return ticket; (2) he acquired a loan to fund his business venture abroad; (3) he arranged to have someone take him to the airport in the United States and also pick him up in Russia; (4) he found a location to store his vehicle; (4) he located tenants to rent his basement apartment; and (5) he asked certain individuals to take care of his affairs, such as collecting rent from tenants, while he was away.  Accordingly, under Hillmon and Rule 803(3), the statements of future intent made by Alekseyev and Klein should be admitted at trial.

> D.  Admission of a Videotaped Pre-Trial Deposition
>     is Appropriate in this Case

The government requests to depose Tamara Alekseeva, the mother of Viktor Alekseyev, pursuant to Rule 15 of the Federal

Rules of Criminal Procedure ("Rule 15") and to introduce a videotape of the deposition at trial, pursuant to Federal Rule of Evidence 804(b)(1).  Because Alekseeva, who currently resides in Russia and is in ill health, is not subject to subpoena and has declined to travel to the United States, admission of a videotaped deposition is the only means for the government to introduce Alekseeva's material testimony at trial.

    1.  <u>Pertinent Facts</u>

The government expects to elicit the following from Alekseeva.  On July 7, 1970, Alekseeva gave birth to Viktor Alekseyev.  She last spoke to her son (Alekseyev) on approximately December 11, 2005, at which time Alekseyev told her that he intended to arrive in Russia on December 20, 2005. Subsequent to Alekseyev's disappearance, Alekseeva received a kit to obtain a sample of her DNA, which she subsequently administered by following the enclosed directions and provided to two males who accepted the kit from her.

In early January 2006, Alekseeva learned from Tatiana Borodin, a former girlfriend of Alekseyev, that Alekseyev was missing.  Thereafter, Dmitriy Yakovlev called Alekseeva on three occasions, demanding that Alekseeva pay him $20,000, which Yakovlev claimed he had lent to Alekseyev.  During one of these conversations, Dmitriy Yakovlev told Alekseeva that Alekseyev had no money in has bank account; when Alekseeva inquired about his

25

basis of knowledge, Dmitriy Yakovlev responded, in sum and
substance, "I know."

In an attempt to secure Alekseeva's testimony at trial,
FBI special agents requested that Alekseeva travel to the United
States to testify at trial in <u>United States v. Dmitriy Yakovlev</u>,
<u>et al.</u>, and advised that the United States government would pay
in full for any expenses incurred in traveling from her residence
in Russia to the United States to testify at trial.  Alekseeva
advised the agents that in part as a result of her ill health
(she has informed FBI agents that she is bed-ridden), she has not
agreed to travel to the United States for trial.

2.   <u>Discussion</u>

a.   <u>Legal Standard</u>

Rule 15 provides in pertinent part:

> Whenever due to exceptional circumstances of
> the case it is in the interest of justice
> that the testimony of a prospective witness
> of a party be taken and preserved for use at
> trial, the Court may upon motion of such
> party and notice to the parties order that
> testimony of such witness be taken by
> deposition . . . .

An order to take a deposition "rests within the sound discretion
of the trial court."  <u>United States v. Johnpoll</u>, 739 F.2d 702,
708 (2d Cir. 1984); <u>United States v. Hayutin</u>, 398 F.2d 944, 954
(2d Cir. 1968).  The Second Circuit has interpreted the term
"exceptional circumstances" to mean that before the deposition of
a prospective witness will be ordered, (1) the witness must be

26

unavailable to appear at trial, and (2) the witness's testimony must be material to the case.  Johnpoll, 739 F.2d at 709.  The burden of proof rests with the movant to demonstrate that "exceptional circumstances" exist warranting the ordering of a deposition.  United States v. Ismaili, 828 F.2d 153, 159 (3d Cir. 1987); United States v. Adcock, 558 F.2d 397, 406 (8th Cir. 1977).

        "Unavailability is to be determined according to the practical standard of whether under the circumstances the [movant] has made a good-faith effort to produce the person to testify at trial."  Johnpoll, 739 F.2d at 709.  The question is one of "reasonableness."  Id.  The movant is not required to go to unreasonable lengths to secure a witness's attendance at trial before moving for a deposition.  See id. (government not required to pay foreign witnesses in excess of statutory witness fees and transport their attorneys to United States).

        b.  Application

        Because Alekseeva is not subject to subpoena and has expressly refused to come to the United States for trial, she is undisputably unavailable.  See United States v. Sindona, 636 F.2d 792, 803-04 (2d Cir. 1980) (government permitted to depose foreign witness who refused to come to the United States).  In addition, her testimony is material because without her testimony, the government will not be able to (1) establish that

27

Alekseeva was Alekseyev's biological mother, (2) establish that she received and properly administered a kit to obtain a DNA sample, and (3) lay a foundation to introduce the DNA sample provided by Alekseeva, which later produced a positive match to the severed body parts recovered in New Jersey in January 2006. Accordingly, the Court should issue an order authorizing a videotaped deposition of Alekseeva pursuant to Rule 15 and allow the government to introduce a videotape of the deposition at trial pursuant to Federal Rule of Evidence 804(b)(1).

CONCLUSION

For the reasons set forth above, the government's pretrial motions should be granted.

Dated:     Brooklyn, New York
           September 17, 2010

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney
                              Eastern District of New York


                    By:  /s/James D. Gatta
                         James D. Gatta
                         Elizabeth A. Geddes
                         Amanda Hector
                         Assistant U.S. Attorneys

29