Michael H. Gold
350 Fifth Avenue, Suite 4400
New York, New York
10118
Tel (212) 838-0699
Fax (212) 868-0013

September 12, 2011

Honorable I. Leo Glasser
United States District Court
United States District Judge
225 Cadman Plaza East
Brooklyn New York 11201

*Re: United States v. Dmitriy Yakovlev, 09 CR. 587, (ILG)*

Dear Judge Glasser:

  I am writing on behalf of my client, Dmitriy Yakovlev, regarding his sentence on September 15, 2011. While the defendant was convicted after trial, the same sentencing factors obtain as if he had entered a plea of guilty. We urge the Court to impose a sentence within the cited guideline range in the pre-sentence report and reject the application by the government for a life sentence that is grotesquely contrary and above the PSR guideline calculation.

  In reaching an appropriate decision at sentencing, the Court must be guided by the facts and circumstances of the particular case. Under *United States v. Booker*, 125 S. Ct. 738 (2005), this Court is no longer bound by the federal sentencing guidelines but must, instead, consider the applicable guideline range as but one factor among several in determining an appropriate sentence. *Kimbrough v. United States*, 128 S.Ct. 554, 574 (2007). The guidelines are only the "starting point and initial benchmark.." *Id., citing Gall v. United States*, 128 S.Ct.586, 596 (2007). It is the sentencing judge who has the advantage of familiarity with the details of the case and can best evaluate the import of the § 3553(a) factors. *Id., Kimbrough*, 128 S.Ct.at 574, citing *Gall,* 128 S.Ct. at 597. The Court may not simply presume that the guideline range is reasonable. *Gall,* at

597. Rather, the Court must make an individualized assessment based on the facts presented.

From its unique vantage point, the Court may conclude that, despite the guidelines, "in a particular case, a within-Guidelines sentence is 'greater than necessary' to accomplish the goals of sentencing . . ." *Kimbrough.*, 128 S.Ct. at 570, *citing* 18 U.S.C. § 3553(a). The not "greater than necessary" language of the federal sentencing statute incorporates the need for the sentence to "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense." 18 U.S.C. § 3553(a). Indeed, as the Supreme Court suggested in *Gall*, a sentence of imprisonment may not promote respect for the law if it appears unduly harsh in light of the real conduct and circumstances of the particular case. *Gall*, 128 S.Ct. at 599.

The factors weighing into the imposition of a reasonable sentence include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines... ;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a).

Weighing all the sentencing factors and the clear intent of the guidelines, a sentence within range 29 is appropriate and sufficient. In calculating the appropriate sentencing guideline range, the PSR properly referred to the fraud sections 2B1.1 and the

aggravated fraud guidelines in 2B1.(b) 13 and 2B1.6. These are the particular and specified guideline sections denoted for these offenses and are used in any and every fraud related conviction in determining the guideline sentence. 2B1.1 was the range employed in calculating the fraud portion of Mrs. Yakovlev's sentence and there is no basis upon which this section can be ignored as to Mr. Yakovlev since the charges relating to the fraud aspects of the offense were identical.

Moreover, 2B1.6 is the only guideline that specifically addresses a conviction under 18 USC 1028, *et seq*.

**§2B1.6. <u>Aggravated Identity Theft</u>**

(a)If the defendant was convicted of violating 18 U.S.C. § 1028A, the guideline sentence is the term of imprisonment required by statute. Chapters Three (Adjustments) and Four (Criminal History and Criminal Livelihood) shall not apply to that count of conviction.

*Commentary*

<u>*Statutory Provisions*</u>*: 18 U.S.C. § 1028A. For additional statutory provision(s), see Appendix A (Statutory Index).*

<u>*Application Notes*</u>*:*

*1.<u>Imposition of Sentence</u>.—*

*(A)<u>In General</u>.—Section 1028A of title 18, United State Code, provides a mandatory term of imprisonment. Accordingly, the guideline sentence for a defendant convicted under 18 U.S.C. § 1028A is the term required by that statute. Except as provided in subdivision (B), 18 U.S.C. § 1028A also requires a term of imprisonment imposed under this section to run consecutively to any other term of imprisonment.*

It is clear that Congress adopted these particular guidelines and sentences for economic fraud and aggravated identity theft crimes. Since the crime of aggravated identity theft includes murder, and Congress established a 5 year statute as a maximum punishment for murder in connection with identity theft, the application of 2B1.1 and 2B1.6 to the instant offenses is mandatory.

Nevertheless, the government asks the Court to ignore the plain language of 2B1.1, 2B1.1(b)13 and 2B1.6 and apply, in contravention to the PSR recommendation, a calculation under 2A1.1, the guideline range for premeditated murder. They ask the Court to impose a life sentence for murder when the statute relating to the only charged murder

offenses carry a 5 year maximum and has a specific guideline range, 2B1.6, that is designed to address those crimes. There is absolutely no legal basis for this request.

We have previously argued that the evidence does not support a finding of murder since there is no proof of how death was caused, in the case of Viktor Alexeyev, and the bodies of Michael Klein and Irina Malezhik have never been found. While we respect the Court's rejection of these arguments, certainly they obtain in determining the issue of premeditation. Again, it is not inconsistent with the evidence that the defendant took advantage of the death and or disappearance of the three people and then committed the economic frauds. Without a cause of death, it is simply impossible to divine premeditation.

The government offers no authority whatsoever to justify ignoring the facially appropriate guideline ranges that clearly and unequivocally apply. In the language of statutory construction, the "plain meaning" of the guidelines must be applied. They cite no case or contrary intent to warrant the application of 2A1.1, the murder range, to fraud crimes with or without aggravated identity theft, which, as stated above, has its own guideline section, 2B1.6 and 2B1.1(b)13, that controls.

2A1.1 sets forth the range of life for the commission of premeditated murder offenses in connection with specified criminal offenses. Those statutes are:

*18 U.S.C. §§ 1111, 1841(a)(2)(C), 1992(a)(7), 2113(e), 2118(c)(2), 2199, 2282A, 2291, 2332b(a)(1), 2340A; 21 U.S.C. § 848(e).*

These crimes address convictions for bank robbery, kidnapping, child murder and other instances of murder in connection with the commission of designated felonies. Bank fraud and aggravated identity theft are not designated offenses for this range and for good reason; they each have their own applicable section governing sentencing. As such, it is unsurprising that the government cites no case or authority for the imposition of a level 43 base offense in a case where other guidelines, as set forth in the PSR, plainly apply. One of the cases cited, *United States v. Feldman,* ---F3d.---, Nos. 10-2775-cr, 10-2776-cr, 2011 WL 3250554 (2d Cir. 2011), supports the position that 2B1.1(b)13 governs..

In *Feldman,* the defendant, *inter alia*, fraudulently promised liver transplants to dying patients in exchange for exorbitant fees. One person was persuaded to go to the Phillipines for such an operation. When he arrived, no transplant had been arranged or

was available. The defendant convinced the patient to remain in the Phillipines for a promised procedure even though the patient initially insisted he wanted to go elsewhere so he would have a chance to live. The patient relied on the defendant's false and fraudulent promise that the transplant would occur, even though the defendant had made no provision for a transplant or had any possibility of arranging one. Instead, he let the patient die.

The Court applied the same 2 point enhancement under 2B1.1(b)13 as recommended by the PSR herein. 2A1.1 was not even discussed, apparently, as the appropriate guideline range even though the defendant's conduct certainly could be called premeditated since it was obvious that he prevented the dying patients from receiving necessary care and his actions led to their death. The Court properly imposed the 2 point enhancement in response to the defendant's misconduct and was sustained on appeal. This Court should do the same.

The statutory scheme of 18 USC 1028(a), 2B1.1(b)13 and 2B1.6 are the only applicable guides for the instant offenses. The language of the aggravated identity theft statute limits additional punishment to 5 years and the guidelines enhancement provide the 2 point enhancement. Therefore, a range of life or other enhancement is inapplicable where the crimes for which the defendant was convicted were already contemplated by the statute and the guidelines and a sentencing structure is already in place to address these offenses. Simply put, Congress adopted a two point enhancement and a non-mandatory 5 year maximum for the crimes for which the defendant was convicted. Application of the murder guideline would be contrary to that determination and must be rejected.

The government seeks the life guideline range in for the bank fraud charges relating to Michael Klein even though he was not charged with murder in connection with that offense. In addition to arguments previously advanced, this position is particularly offensive to the defendant's Sixth Amendment rights given the extreme upward departure from a level 29 finding based upon the economic total loss from *all 3* victims to a level 43 with a life sentence.

All nine justices in *Booker* agreed that, at least as to elements of crimes of which the defendant is accused, the jury must confirm the truth of every accusation. *543 U.S. at*

*239; id. at 327-28 (Rehnquist, C.J., dissenting)*. Indeed, the Framers could not have intended to guard against governmental oppression through criminal juries with ultimate power to confirm or reject the truth of every accusation, to acquit even in the face of guilt, and to partially acquit to lessen unduly harsh punishment, only to allow an administrative agency, prosecutor and judge to then nullify the jury's acquittal. Doing so eviscerates the "fundamental reservation of power" in the jury and prevents it from "exercis[ing] the control that the Framers intended." *Blakely, 542 U.S. at 306*. And doing so by ignoring the "[e]qually well founded ...companion right to ... proof beyond a reasonable doubt" is no answer. *Apprendi, 530 U.S. at 478*. Like other "'inroads upon the sacred bulwark of the nation," the logical possibility that different standards of proof applied by jury and judge might produce different results is "fundamentally opposite to the spirit of our constitution.'" *Booker, 543 U.S. at 244, quoting 4 Blackstone 343-44*.

   The Sixth Amendment guarantees a sentence that is wholly authorized by the jury verdict. *See Cunningham v. California, 127 S. Ct. 856, 869 (2007)* ("If the jury's verdict alone does not authorize the sentence . . . the Sixth Amendment requirement is not satisfied."); *Blakely, 542 U.S. at 306* (*Apprendi* "ensures that the judge's authority to sentence derives wholly from the jury's verdict"); *Apprendi, 530 U.S. at 483 n.10* ("The judge's role in sentencing is constrained at its outer limits by the facts alleged in the indictment and found by the jury."). When a court uses acquitted crimes to calculate a determinate guideline sentence, the court "is expressly considering facts that the jury verdict not only failed to authorize; it considers facts of which the jury expressly disapproved," and "they are facts comprising different crimes, each in a different count." *United States v. Pimental, 357 F. Supp. 2d 143, 152-53 (D. Mass. 2005)*. Calculating a sentence based upon an uncharged crime is even worse since a jury was never even exposed to the elements of the offense.

   Application of such an egregiously high guideline range to impose sentence for a crime not even charged offends every principle of a right to trial. It allows the constitutionally infirm result of allowing a life sentence based upon a judicial finding by a preponderance of evidence of an uncharged offense whereas a jury would have to find such crime beyond a reasonable doubt before a guilty verdict could be returned. This result must be rejected.

The Court is empowered to consider the potential disparity in the co-defendant's sentence in fashioning the appropriate sentence for Mr. Yakovlev. *See United States v. De La Cruz,* No.09-4641-cr, 2010 WL 4136669 (2d Cir. Oct. 21. 2010);*United States v. Ebbers,* 458 F3d. 110 (2d. Cir. 2006). District courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and we may remand cases where a defendant credibly argues that the disparity in sentences has no stated or apparent explanation. *See United States v. McGee,* 408 F.3d 966, 988 (7th Cir.2005) (remanding for reconsideration of sentencing disparities between equally culpable codefendants.

Concededly, the charges and circumstances are different between Mr. and Mrs. Yakovlev. She was not charged with the aggravated identity theft or bank fraud charges related to Michael Klein. Nevertheless, she was charged with the Irina Malezhik fraud and it is impossible to divine any real distinction in the evidence against her as compared to Mr. Yakovlev. Each was on video tape using the Malezhik credit cards. Mrs. Yakovlev made the watch purchases from Gala Gabinsky. There was no more proof as to the manner, time or place of death against her as there was against him. Nevertheless, with identical proof, or lack thereof, of murder, the government never charged her with aggravated identity theft and never asked the Court to utilize a level 43 guideline range for murder in imposing sentence. I understand the Court sentenced her to a 3 year cumulative sentence.

The convictions and fraud calculations for each defendant were certainly different. However, it is inconsistent and illustrative that the government chose not to charge her with the Malezhik murder or ask for the murder guideline to be used in connection with her sentence. This is the sort of prosecutorial manipulation of the charging process that contributed to the *Booker* decision making the guidelines advisory. The arbitrary choice to charge Mr. Yakovlev with aggravated identity theft and not his wife and the request to impose a life sentence on him while she serves a 3 year sentence is too disparate to be sanctioned.

For the foregoing reasons, we respectfully request that the recommendations and guideline calculations in the PSR be adopted by the Court and a sentence imposed that is reasonable and warranted as compared to his co-defendant.

Respectfully submitted,

Michael H. Gold